Filed 4/29/14  P. v. Velasco CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>WILLIAM ZAFRA VELASCO, JR.,<br><br>　　　　　　　Defendant and Appellant. | B239192<br><br>(Los Angeles County<br>　Super. Ct. No. KA094631) |

APPEAL from the judgment of the Superior Court of Los Angeles County. Steven D. Blades, Judge.  Affirmed.

Christopher Nalls, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson, Janet E. Neeley and Jonathan J. Kline, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \*

Defendant William Zafra Velasco, Jr., pled guilty, without a plea agreement, to one count of burglary (Pen. Code, § 459, count 1)[1], 14 counts of invasion of privacy (§ 647, subd. (j)(3), counts 2 through 15), and one count of possessing burglary tools (§ 466, count 17). During sentencing, the trial court exercised its discretion under section 290.006 to require defendant to register as a sex offender for life. Defendant contends the trial court abused its discretion by applying an improper legal standard when determining whether to order registration. Defendant further contends that because the registration requirement includes a residency restriction, it constitutes a punishment that increases the penalty for his conviction, and that he was not advised and asked to waive his right to have a jury decide the facts indicating whether he should be required to register. Relying on *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*), defendant argues that a jury must find true, beyond a reasonable doubt, the facts supporting discretionary imposition of the registration requirement. We reject both of defendant's claims and affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

The factual basis of defendant's plea was evidence received at his preliminary hearing.

On April 14, 2011, defendant visited a Starbucks in Glendora and placed a hidden camera in the women's restroom, pointed at the toilet. The camera looked like a hook, and was capable of recording and storing video. Over a two-day period, defendant entered the restroom hourly to replace the camera with an identical one. Defendant took the used cameras home and downloaded the videos to his computer. Videos of multiple females were captured, including underage girls. Defendant downloaded approximately 35 videos over the two-day period.

As a Starbucks employee was cleaning the restroom, she discovered a camera beneath the sink. The employee removed the camera and showed it to her manager, who called the police.

---

**1**     All further undesignated references are to the Penal Code.

2

That same month, the apartment of Jane Doe 1 on the campus of a university in Glendora was burglarized. She had female roommates, including Jane Does 17 and 18. Between April 18, 2011, and April 24, 2011, the students were gone for spring break. Previously, defendant had seen Jane Doe 1 at the apartment complex and thought she was beautiful. Defendant went to her apartment at night and knocked on the door. When defendant realized no one was home, he entered the apartment through a window, and stole Jane Doe 1's underwear, and her roommates' underwear as well. In addition to the underwear, defendant took plastic tampon applicators and Jane Doe 1's bank statement.

Upon returning home from spring break, Jane Doe 17 noticed her bed was askew, two window blinds had been ripped off, and that the window screen had been removed. All three women found that some of their underwear was missing and identified the underwear and plastic tampon applicators as theirs in court.

Glendora Police Detective Nancy Miranda identified defendant as the person who repeatedly entered the women's restroom at Starbucks by reviewing security footage, defendant's credit card information tracked through a purchase made there, and by accessing defendant's Facebook page. On May 4, 2011, police took defendant into custody and executed a warrant to search his home. In defendant's bedroom, police found several hook cameras, several pieces of women's underwear, plastic tampon applicators, a bank statement belonging to Jane Doe 1, and a set of lock picks. The underwear, tampon applicators and bank statement were together in a box under defendant's bed. The underwear was kept in a plastic bag within the box.

Detective Miranda advised defendant of his *Miranda*[2] rights. Defendant waived his rights and freely spoke with Detective Miranda. Defendant told Detective Miranda he made the hidden restroom recordings out of sexual frustration. He put the hidden cameras in the Starbucks restroom to film women relieving themselves, because he had a "fetish" for watching women use the restroom. Defendant denied putting cameras in any other locations, and denied sharing the videos.

---

[2]     *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

Defendant admitted he broke into the victims' apartment to steal their underwear to masturbate to, and that he placed the underwear in a plastic bag to preserve the scent. He took Jane Doe 1's bank statement so that he could find her picture on the Internet to look at while he masturbated.

Defendant's sentencing memorandum included assessments from mental health professionals who treated defendant, describing defendant's efforts to receive treatment for his sexual addiction. It also included 26 letters of support from defendant's friends and family. On May 6, 2011, two days after his arrest, defendant visited a clinical psychologist, Judith Meyers-Abell, who advised him to see a sex therapist. On May 18, 2011, defendant began weekly sessions with William Bercaw, a certified sex addiction therapist and certified sex therapist, who reported that defendant "diligently embraced his treatment" and "is highly unlikely to repeat his offenses." Bercaw noted that defendant was very remorseful and was disgusted by the crimes he committed. In June, Dr. Timothy Fong diagnosed defendant with compulsive sexual disorder, major depressive disorder, and social anxiety disorder. He opined that defendant would not have committed his offenses if he had received mental health treatment before he offended. Dr. Fong believed defendant "made significant improvements in his recovery and overall stability." In November, defendant completed an intensive 12-day outpatient program at the Sexual Recovery Institute in Los Angeles. Defendant was observed to be "engaged and attentive." He "made significant progress in addressing" his behaviors that led to treatment. Dr. Nathan Lavid conducted a psychiatric evaluation on December 12, 2011, and concluded that defendant's "risk of recidivism is low" and that defendant "does not pose a danger to the community."

At sentencing, the trial court denied probation and sentenced defendant to four years in prison on the burglary charge. Defendant's sentence of six months for each of the misdemeanor counts was ordered to run concurrently with the burglary count. Pursuant to section 290.006, the court ordered defendant to lifetime sex offender registration, stating "there's no doubt in my mind that these crimes were committed for the purpose of sexual gratification." Because defendant placed a camera at Starbucks

4

over a two-day period, which involved 18 or 19 victims, and later committed a burglary, the court found "this is more than a one time thing. This indicates that this behavior went on for some period of time." The trial court acknowledged that defendant had sought treatment, but found that "there's a history of mental illness and some significant problems with sexual gratification and no one can say for sure that these are things that can be cured. So while the doctors opine that his risk of re offending may be low, that's not zero. So I think it's appropriate for the safety of the community and the safety of these victims to impose the lifetime registration."

This timely appeal followed.

## DISCUSSION

**1.      The Trial Court Applied the Proper Legal Standard and Did Not Abuse Its Discretion in Ordering Lifetime Sex Offender Registration**

Section 290.006 gives the trial court discretion to require sex offender registration for persons convicted of offenses not enumerated in section 290, which requires mandatory registration for specified offenses. (See also *People v. Hofsheier* (2006) 37 Cal.4th 1185, 1197 (*Hofsheier*).) Discretionary registration may be ordered "if the court finds at the time of conviction or sentencing that the person committed the offense as a result of sexual compulsion or for purposes of sexual gratification." (§ 290.006.) The premise behind sex offender registration legislation is that "sex offenders pose a 'continuing threat to society'. . . ." (*Wright v. Superior Court* (1997) 15 Cal.4th 521, 527.) As such, one of the purposes of the registration requirement is " ' " 'to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future. [Citation.]' " ' [Citations.]" (*Hofsheier*, *supra*, at p. 1196.) An alternative purpose for sex offender registration is "to notify members of the public of the existence and location of sex offenders so they can take protective measures." (*Ibid.*)

In *Hofsheier*, the California Supreme Court clearly stated the process to be applied by lower courts when exercising discretion to order lifetime sex offender registration under section 290.006. "[T]he trial court must engage in a two-step process: (1) it must

find whether the offense was committed as a result of sexual compulsion or for purposes of sexual gratification, and state the reasons for these findings; and (2) it must state the reasons for requiring lifetime registration as a sex offender." (*Hofsheier*, *supra*, 37 Cal.4th at p. 1197.)

"By requiring a separate statement of reasons for requiring registration even if the trial court finds the offense was committed as a result of sexual compulsion or for purposes of sexual gratification, the statute gives the trial court discretion to weigh the reasons for and against registration in each particular case." (*Hofsheier*, *supra*, 37 Cal.4th at p. 1197.) In exercising its discretion under the second prong of the *Hofsheier* analysis, the trial court should "consider all relevant information available to it at the time it makes its decision." (*People v. Garcia* (2008) 161 Cal.App.4th 475, 483, disapproved on other grounds by *People v. Picklesimer* (2010) 48 Cal.4th 330, 338, fn. 4.) One relevant inquiry is whether defendant is likely to reoffend in the future. (*People v. Garcia,* at p. 485 ["information regarding the defendant's behavior since the time of his original sentencing certainly is relevant to the determination as to the likelihood he will reoffend and the necessity for registration"]; see also *People v. Thompson* (2009) 177 Cal.App.4th 1424, 1431.)

Defendant does not contend the trial court erred in finding that his crimes were committed for the purpose of sexual gratification. However, defendant complains the trial court abused its discretion in ordering defendant to register as a sex offender because it applied a "zero risk" standard to explain its reasons for ordering registration under the second prong of the *Hofsheier* analysis. Alternatively, defendant argues the trial court abused its discretion under the proper standard because it did not find that defendant was likely to reoffend in the future. We find the trial court applied the proper standard, and did not abuse its discretion.

We review the trial court's ruling for an abuse of discretion. (See *Lewis v. Superior Court* (2008) 169 Cal.App.4th 70, 79 (*Lewis*).) A trial court abuses its discretion if it applies an incorrect legal standard when making its decision. (*People v. Knoller* (2007) 41 Cal.4th 139, 156.) If the trial court applies the correct legal standard,

6

"[b]road deference must be shown to the trial judge. The reviewing court should interfere only ' "if we find that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did." [Citations.]' [Citation.]" (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.) The trial court's ruling will be affirmed unless it is "arbitrary, capricious or patently absurd." (*People v. Jordan* (1986) 42 Cal.3d 308, 316.)

In explaining its reasons for ordering registration, the trial court noted that defendant did not simply commit one offense; his behavior continued "for some period of time" and involved numerous victims. Defendant recorded a number of females in the restroom over a period of two days, downloading approximately 35 videos onto his computer. About a week later, defendant broke into an apartment to steal women's underwear and tampon applicators. Defendant was diagnosed with mental illnesses that may compromise his ability to refrain from reoffending. The trial court explained that in weighing all of the above information, it seemed appropriate for the "safety of the community" and "safety of these victims" to impose lifetime registration. The trial court also noted that "while the doctors opine on the risk of reoffending may be low, that's not zero."

We disagree with the defendant's and the dissent's characterization of the standard applied by the trial court as "zero risk," as it ignores all of the other statements made by the court on the record. The trial court's statement was made in the course of explaining at some length the court's reasons for ordering lifetime registration. We understand the court's comments to mean that although some doctors had opined the risk of recidivism was low, defendant nonetheless had been diagnosed with multiple, serious mental illnesses, and there remained a risk of reoffending.

Moreover, defendant's reliance on *Lewis*, *supra*, 169 Cal.App.4th 70, for the proposition that the trial court was required to find he was *likely* to reoffend in the future, is misplaced. *Lewis* does not hold that section 290.006 requires some specific quantum of risk of reoffending. Rather, the lifetime registration requirement there was deemed

7

improper because there was absolutely no evidence in the record indicating that the defendant would commit another sexual offense in the future. (*Lewis,* at p. 79.)**3**

Here, there is ample evidence that defendant poses a risk of reoffending. Defendant's crimes had already escalated when he burglarized an apartment to steal items for his sexual gratification. Although defendant was receiving treatment after his arrest, he still suffered from the mental health problems that led him to offend in the first place, and that required continuing treatment. The trial court weighed the evidence before it and determined that, notwithstanding the significant improvements defendant had made in therapy, defendant's mental illness compromised his ability to refrain from reoffending, and therefore defendant posed a significant enough risk to the safety of the community that registration was warranted. The trial court properly relied on defendant's repeated conduct, severe sexual gratification issues, and history of mental illness when imposing the registration requirement. The trial court was not required to accept as true the experts' opinions that defendant would be able to control his compulsive sexual behavior with ongoing treatment and monitoring. (*Hofsheier*, *supra*, 37 Cal.4th at p. 1197; see also *People v. Garcia*, *supra*, 161 Cal.App.4th at p. 483.) Accordingly, we find no abuse of discretion on this record.

---

**3** In *Lewis*, the defendant was originally ordered to register under the mandatory provisions of section 290 when he was convicted in 1987 of two counts of oral copulation with a minor. In 2006, *Hofsheier* was decided, and it found mandatory registration under section 290 for voluntary oral copulation with a minor violated equal protection. Defendant filed a motion in the trial court to set aside the order requiring his registration under section 290 under *Hofsheier*. He also argued that discretionary registration under section 290.006 was not warranted because he had not reoffended in the 20 years since his conviction. (*Lewis*, *supra*, 169 Cal.App.4th at pp. 73-75.) The trial court denied his motion, finding registration was appropriate under section 290.006. The appellate court reversed, concluding there was nothing in the record to suggest the defendant would reoffend even in 1987, when he had originally been sentenced under section 290. The court also found that "in the 20 plus years since his conviction under section 288a, subdivision (b)(1), Lewis has committed no offenses requiring him to register as a sex offender and no offenses similar to those requiring registration." (*Lewis*, at p. 79.)

8

**2.    Defendant Did Not Have a Right to a Jury Trial of the Facts Underlying the Trial Court's Discretionary Registration Decision**

Defendant contends his right to a jury trial was violated when the trial court determined the truth of the facts underlying its order requiring him to register as a sex offender.  We disagree.

*Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi*, *supra*, 530 U.S. at p. 490.)  The California Supreme Court previously held *Apprendi* does not apply to sex offender registration because it "is not considered a form of punishment under the state or federal Constitution." (*Hofsheier*, *supra*, 37 Cal.4th at p. 1197; see also *People v. Picklesimer*, *supra*, 48 Cal.4th at pp. 343-344 [*Apprendi* does not apply to a discretionary determination to require sex offender registration under section 290.006].)

However, since these cases were decided, Jessica's Law was passed, which amended our Penal Statutes relating to sex offenders.[4]  One of these amendments included the addition of a residency restriction for registered sex offenders.  All registered sex offenders in California are now barred from residing within 2,000 feet of a

---

[4]    "[V]oters enacted Proposition 83, The Sexual Predator Punishment and Control Act:  Jessica's Law (Prop. 83, as approved by voters, Gen. Elec. (Nov. 7, 2006); hereafter Proposition 83 or Jessica's Law).  Proposition 83 was a wide-ranging initiative intended to 'help Californians better protect themselves, their children, and their communities' [citation] from problems posed by sex offenders by 'strengthen[ing] and improv[ing] the laws that punish and control sexual offenders' [citation].  [¶]  Among other revisions to the Penal Code, Proposition 83 amended section 3003.5, a statute setting forth restrictions on where certain sex offenders subject to the lifetime registration requirement of section 290 may reside.  New subdivision (b), added to section 3003.5, provides: 'Notwithstanding any other provision of law, it is unlawful for any person for whom registration is required pursuant to Section 290 to reside within 2000 feet of any public or private school, or park where children regularly gather.' (§ 3003.5, subd. (b) . . . .)  The new residency restrictions took effect on November 8, 2006, the effective date of Proposition 83." (*In re E.J.* (2010) 47 Cal.4th 1258, 1263, fns. omitted.)

school or park where children gather.  (§ 3003.5, subd. (b).)  In *People v. Mosley* (review granted Jan. 26, 2011, S187965), the Fourth District Court of Appeal concluded that the residency restriction constitutes punishment and that *Apprendi* now mandates a jury trial on the facts supporting the discretionary imposition of sex offender registration.  Our Supreme Court granted review of the *Mosley* decision, and will soon consider whether the residency restriction is an increase in penalty implicating the right to a jury trial.

Respondent contends defendant forfeited his *Apprendi* claim by failing to raise it in the trial court.  (See *People v. Marchand* (2002) 98 Cal.App.4th 1056, 1060-1061.)  However, a defendant's failure to object below does not preclude the claim that he was denied the constitutional right to a jury trial on appeal.  (*People v. French* (2008) 43 Cal.4th 36, 46; see also *Hale v. Morgan* (1978) 22 Cal.3d 388, 394 [court may review constitutional errors without objection].)  Moreover, at the time defendant was sentenced, *Mosley* was pending before our Supreme Court, and therefore the law was (and still is) unsettled.  A change in the law may excuse counsel's failure to object at trial.  (*People v. Black* (2007) 41 Cal.4th 799, 811 [we consider the " 'state of the law as it would have appeared to competent and knowledgeable counsel at the time of the trial' "].)  Because the application of *Apprendi* to section 290.006 was unsettled at the time defendant was sentenced, we find that a competent attorney would not necessarily have made an objection on this basis, and in any event, that we have discretion to review defendant's constitutional claim.  Therefore, the issue has not been forfeited.

Here, defendant admits his crimes were committed for the purpose of sexual gratification,[5] but he contends the jury was required to make "the factual findings supporting the court's discretionary decision to impose registration" under the second

---

[5]    Defendant admitted he made the hidden restroom recordings at the Starbucks out of sexual frustration and that this was a "fetish" of his.  In addition, defendant admitted he stole the underwear from the apartment so that he could later use them for masturbation.  Further, defendant admits that even if it was error to not try these facts to a jury, any error would necessarily be harmless.  We agree.  There is extensive evidence his crimes were committed for the purpose of sexual gratification.

prong of the *Hofsheier* analysis. Specifically, defendant argues a jury was required to decide the likelihood he would reoffend. Not so.

The second prong of *Hofsheier* only requires "[the court to] state the reasons for requiring lifetime registration as a sex offender." (*Hofsheier*, *supra*, 37 Cal.4th at p. 1197.) Ultimately, "the statute gives the trial court discretion to weigh the reasons for and against registration in each particular case." (*Ibid.*) In our view, this determination is not subject to *Apprendi*'s requirements. "[T]he scope of the constitutional jury right must be informed by the historical role of the jury at common law." (*Oregon v. Ice* (2009) 555 U.S. 160, 170; *id.* at p. 168 [*Apprendi* does not apply to the decision to impose consecutive sentences on a defendant convicted of multiple offenses, because the "historical record demonstrates that the jury played no role in the decision to impose sentences consecutively or concurrently. Rather, the choice rested exclusively with the judge."].) A decision about whether to order registration is a determination based upon judicial findings about the nature of the offense and defendant's character. (See *Hofsheier*, *supra*, 37 Cal.4th at p. 1197.) The assignment to a judge of such a determination does not "implicate[] *Apprendi*'s core concern: a legislative attempt to 'remove from the [province of the] jury' the determination of facts that warrant punishment for a specific statutory offense." (*Oregon v. Ice*, at p. 170.) "[A]s *Apprendi*'s core concern is inapplicable to the issue at hand, so too is the Sixth Amendment's restriction on judge-found facts." (*Ibid.*)

Moreover, we disagree with *Mosley*'s reasoning because it is inconsistent with other Supreme Court authority. In *In re E.J.*, *supra*, 47 Cal.4th at page 1278, a group of parolees who had been convicted before enactment of Jessica's Law, but paroled after it became effective, claimed applying the residency restriction to them constituted an impermissible retroactive application of the statute and violated the prohibition on ex post facto laws. (*In re E.J.*, at p. 1264.) Our Supreme Court concluded that because the new residency restrictions are not punitive, they do not trigger *Apprendi*. (*In re E.J.*, at p. 1278 ["Although [petitioners] fall under the new restrictions by virtue of their *status* as registered sex offenders who have been released on parole, they are not being

11

'additionally punished' for commission of the original sex offenses that gave rise to that status. Rather, petitioners are being subjected to new restrictions on where they may reside while on their *current parole* – restrictions clearly intended to operate and protect the public *in the present*, not to serve as additional punishment for past crimes."]; see also *People v. Picklesimer*, *supra*, 48 Cal.4th at p. 344 [noting that a hypothetical assuming Proposition 83's restrictions constituted punishment would be contradicted by the reasoning of *In re E.J.*].) This reasoning is equally applicable under the present circumstances. Therefore, we are not persuaded that defendant's right to a jury trial was violated.

## DISPOSITION

The judgment is affirmed.


GRIMES, J.


I CONCUR:

BIGELOW, P. J.

**Flier, J., Dissenting**

Because I conclude the trial court abused its discretion in ordering Velasco to register for life as a sex offender I respectfully dissent.

## A. Background

### 1. The Offenses

Velasco pled guilty to 14 counts of disorderly conduct, one count of burglary, and one count of possession of a burglar's tools. It was alleged that the disorderly conduct occurred on April 14 and April 15, 2011, that the burglary occurred April 18, 2011, and that the possession of burglar's tools occurred May 4, 2011. The majority opinion comprehensively describes the facts underlying the convictions.

The court sentenced Velasco to four years in state prison for the burglary with all other terms to run concurrently. The court exercised its discretion to order Velasco to register as a sex offender pursuant to Penal Code section 290.006.[1]

At the time of his offenses Velasco was a 25-year-old graduate student with no criminal history. Velasco sought mental health treatment immediately upon his release on bail. Velasco clearly had the support of his family and friends as 26 of Velasco's relatives and friends wrote letters on his behalf. The letters uniformly described Velasco's conduct underlying his convictions as an aberration.

### 2. Opinions of Velasco's Likelihood to Reoffend

Velasco's psychologist Bill Bercaw, who held a doctorate in clinical psychology and was a certified sex addiction therapist, described Velasco as having depressive symptoms and isolating himself from others *prior* to the crimes. Bercaw described

---

[1] Undesignated statutory citations are to the Penal Code.

1

Velasco's progress in treatment as follows: Velasco "diligently embraced his treatment as an opportunity to reorder his life and to atone for his transgressions. He was very aggressive with his treatment, completing demanding homework assignments week after week and doing everything I asked him to do. Throughout our therapeutic process, William has struggled mightily with deep feelings of guilt and shame for his offenses." "One of the most challenging processes for William therapeutically was overcoming his isolating tendencies, especially while he was so ashamed of himself. I witnessed William courageously begin to allow others in, as he developed a support system that has become very meaningful to him. The combination of his strong motivation for treatment, his much improved emotional health and his much improved support system allow me to confidently project ongoing improvement." Bercaw opined that Velasco was "highly unlikely to repeat his offenses . . . ."

Velasco's psychiatrist Dr. Timothy Fong, a clinical professor at the University of California Los Angeles, treated Velasco since June 2011. Fong was certified in psychiatry and addiction psychiatry and served as the director of the Impulse Control Disorders Clinic and the Addiction Medicine Clinic at the University of California Los Angeles. Fong diagnosed Velasco as suffering from compulsive sexual behavior, major depressive disorder, and social anxiety disorder. Fong described Velasco's progress as follows: "William has made significant improvements in his recovery and overall stability. He has been compliant with all of the treatment recommendations that I have made, and he remains highly motivated to stay active in treatment. He has built a strong network of support that will increase the likelihood of him continuing to improve." Velasco was assessed to be "a low risk of recidivism, and is believed not to be a danger to the community." "In the six months that I have worked with him, William has made notable improvements. He is now aware of the signs and symptoms of compulsive sexual behaviors, depression and anxiety and is able to identify triggers that formerly led him to acting out. He has a much stronger and deeper understanding of his disease and has been working on developing coping skills and on behavioral techniques to keep his symptoms from expanding."

2

According to Fong, Velasco's "motivation to continue to do the work to stay in recovery is very high. He has expressed significant remorse and guilt about his actions and has accepted responsibility for what he's done. This, too, is another strong prognostic sign that he understands and accepts his diagnosis." Fong opined that "had William been able to enter treatment before this offense, the likelihood that this offense would have occurred would have been essentially zero. His behaviors, in my opinion, were a direct result of untreated symptoms of compulsive sexual behavior. These symptoms can be controlled very well with ongoing treatment and monitoring (which he currently has in place)."

Dr. Nathan Lavid, a forensic psychiatrist opined that Velasco has "responded well to treatment . . . . In addition, Mr. Velasco has good insight and good judgment regarding the continued need for treatment." Dr. Lavid opined that Velasco's "risk of recidivism is low and he does not pose a danger to the community." Velasco did not show factors indicative of risk of violence "such as lack of insight, negative attitudes, active symptoms of major mental illness, impulsivity, and being unresponsive to treatment." Dr. Lavid opined that at the time of the interview Velasco's sexual addiction was in remission.

In addition to seeing Drs. Bercaw, Fong, and Lavid, Velasco completed an intensive outpatient program at the Sexual Recovery Institute. While at the institute, Velasco "was thoroughly compliant, performed all assignments and was actively engaged during individual, family and group psychotherapy sessions." Velasco "initiated insightful comments without prompting." He also followed this program by consistently attending 12-step support groups.

It is significant that there was no evidence contradicting the opinions of Drs. Bercaw, Fong and Lavid. No evidence was presented supporting the inference that at the time of sentencing Velasco was likely to reoffend.

*3. Sentencing Hearing*

The court ordered Velasco "to register for the rest of his life as a sex offender . . . ." "This is pursuant to . . . section 290.006 where I can impose the 290 registration if I find that the crimes were clearly committed for the purposes of sexual

3

gratification.  I find that under this case the first degree burglary was committed primarily for that purpose . . . .  [¶]  The crime placing the camera in the Starbucks to watch these women and children females use the bathroom I think were clearly designed for sexual gratification . . . ."

The court later reaffirmed that it imposed the registration requirement because the crimes were committed for sexual gratification.  The court explained:  "The reason for the lifetime registration is that there's no doubt in my mind that these crimes were committed for the purpose of sexual gratification, and in looking at a first degree burglary, which is a serious crime, the defendant entered the apartment of these two young ladies, or three young ladies, for the primary purpose of stealing their underwear.  Very bizarre in and of itself, but that – and placing the camera in the Starbucks for a period of time where at least 19 victims were identified, or 18, or perhaps more, this is more than a one time thing.  This indicates that this behavior went on for some period of time, and I think there was even testimony at the preliminary hearing that . . . the defendant would utilize a laptop in the lobby of the Starbucks and go to the bathroom to change a disc or card or something that was connected to the camera.  So that and looking at the defendant's mental health issues, and his efforts to seek treatment, which I appreciate on the one hand, but on the other hand there's a history of mental illness and some significant problems with sexual gratification and no one can say for sure that these are things that can be cured.  So while the doctors opine that his risk of re offending may be low, that's not zero.  So I think it's appropriate for the safety of the community and safety of these victims to impose the lifetime registration."

*B. Analysis*

Section 290.006 provides the court with discretion to impose a lifetime registration under section 290.[2]  The purpose of the section 290 registration requirement is to assure

---

**2**      Section 290.006 provides:  "Any person ordered by any court to register pursuant to the Act for any offense not included specifically in subdivision (c) of Section 290, shall so register, if the court finds at the time of conviction or sentencing that the person committed the offense as a result of sexual compulsion or for purposes of sexual

4

convicted persons are "'"'"readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future'"'"' and "to notify members of the public of the existence and location of sex offenders so they can take protective measures." (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1196.) When, as in this case, the court has discretion to impose the registration requirement the court

gratification. The court shall state on the record the reasons for its findings and the reasons for requiring registration."

Section 290, subdivision (b) provides: "Every person described in subdivision (c), for the rest of his or her life while residing in California, or while attending school or working in California, as described in Sections 290.002 and 290.01, shall be required to register with the chief of police of the city in which he or she is residing, or the sheriff of the county if he or she is residing in an unincorporated area or city that has no police department, and, additionally, with the chief of police of a campus of the University of California, the California State University, or community college if he or she is residing upon the campus or in any of its facilities, within five working days of coming into, or changing his or her residence within, any city, county, or city and county, or campus in which he or she temporarily resides, and shall be required to register thereafter in accordance with the Act."

Mandatory registration is required for "[a]ny person who, since July 1, 1944, has been or is hereafter convicted in any court in this state or in any federal or military court of a violation of Section 187 committed in the perpetration, or an attempt to perpetrate, rape or any act punishable under Section 286, 288, 288a, or 289, Section 207 or 209 committed with intent to violate Section 261, 286, 288, 288a, or 289, Section 220, except assault to commit mayhem, subdivision (b) and (c) of Section 236.1, Section 243.4, paragraph (1), (2), (3), (4), or (6) of subdivision (a) of Section 261, paragraph (1) of subdivision (a) of Section 262 involving the use of force or violence for which the person is sentenced to the state prison, Section 264.1, 266, or 266c, subdivision (b) of Section 266h, subdivision (b) of Section 266i, Section 266j, 267, 269, 285, 286, 288, 288a, 288.3, 288.4, 288.5, 288.7, 289, or 311.1, subdivision (b), (c), or (d) of Section 311.2, Section 311.3, 311.4, 311.10, 311.11, or 647.6, former Section 647a, subdivision (c) of Section 653f, subdivision 1 or 2 of Section 314, any offense involving lewd or lascivious conduct under Section 272, or any felony violation of Section 288.2; any statutory predecessor that includes all elements of one of the above-mentioned offenses; or any person who since that date has been or is hereafter convicted of the attempt or conspiracy to commit any of the above-mentioned offenses." (§ 290, subd. (c).)

5

must "weigh the reasons for and against registration in each particular case." (*Id*. at p. 1197.)

As the majority acknowledges, the likelihood of reoffending is the primary consideration in evaluating whether registration should be ordered. (*People v. Thompson* (2009) 177 Cal.App.4th 1424, 1431 ["Most importantly, the trial court must consider the likelihood defendant will reoffend."].) "Where registration is discretionary, then, one consideration before the court must be the likelihood that the defendant will reoffend." (*People v. Garcia* (2008) 161 Cal.App.4th 475, 485, disapproved on other grounds in *People v. Picklesimer* (2010) 48 Cal.4th 330, 338, fn. 4.) Thus, in *Garcia*, the case was remanded for the trial court to consider "the evidence defendant presented as to his good behavior and rehabilitation" in order to determine whether the defendant was likely to reoffend. (*Garcia*, at p. 485.)

Here, both the trial court and the majority ignore the evidence Velasco presented as to his good behavior and rehabilitation and instead focus only on defendant's crimes, emphasizing that they included a burglary to steal items for sexual gratification. The narrow focus on Velasco's conduct April 14 thru April 18, 2011, ignores the critical question -- whether by the time of sentencing Velasco had rehabilitated himself to such an extent that he was not likely to reoffend. In evaluating whether lifetime registration was warranted, the court should have considered the evidence subsequent to Velasco's convictions. (*People v. Garcia, supra*, 161 Cal.App.4th at p. 483 [trial court erred in concluding it could not consider circumstances subsequent to the defendant's convictions].)

Once the relevant evidence is considered, the only available conclusion is that Velasco was not likely to reoffend. The undisputed evidence showed that he was a low risk of offending. Every physician and psychologist who evaluated Velasco determined that he posed a low risk of recidivism. No contrary evidence was introduced and no evidence supported the trial court's conclusion that defendant posed a risk of reoffending. Although the trial court was not required to accept the experts' opinions, it did not question their credibility. Instead, it simply determined that "while the doctors opine that

6

his risk of re offending may be low, that's not zero." The "not zero" standard, however, is not supported by any case law. Its application effectively would turn the discretionary registration requirement into a mandatory one because no defendant would be able to show a zero percent chance of recidivism. Because the undisputed evidence showed that at the time of sentencing defendant was not likely to commit a sex offense, I would reverse the lifetime registration requirement. (See *Lewis v. Superior Court* (2008) 169 Cal.App.4th 70, 79 [order the court to relieve the defendant of any sex offender registration requirement where "nothing in the record" supported a finding that he was likely to commit a sex offense].)

FLIER, J.