Filed 5/21/15  P. v. Tanner CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DAVID RAY TANNER,<br><br>    Defendant and Appellant. | F067713<br><br>(Super. Ct. No. CRM025721)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Merced County.  Mark V. Bacciarini, Judge.

Michael Pinkerton, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Janet E. Neeley, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

David Tanner was tried by jury on felony charges of forcible rape, false imprisonment, making criminal threats, assault by means likely to produce great bodily injury, and furnishing methamphetamine.  The jury returned guilty verdicts on the latter

three counts, but acquitted him of false imprisonment and hung on the forcible rape charge. Despite a mistrial on the allegations of rape, the trial court exercised its discretion under Penal Code section 290.006 to impose a sex offender registration requirement as part of Tanner's sentence based on its finding that his crimes were committed for purposes of sexual gratification. This appeal concerns the constitutionality of the registration requirement.

Tanner argues that he had a constitutional right to have a jury decide the factual prerequisites upon which the registration requirement was based. He further contends that sex offender registration has corollary effects which amount to cruel and unusual punishment. Both arguments are directly at odds with the California Supreme Court's opinion in *People v. Mosley* (2015) 60 Cal.4th 1044 (*Mosley*), which was decided during the pendency of this appeal. In light of the holdings in *Mosley*, and for the additional reasons discussed below, we reject his constitutional claims.

Tanner alternatively seeks remand for further sentencing proceedings on grounds that the trial court failed to provide a statement of reasons for imposing the registration requirement. Raised for the first time on appeal, this claim is subject to our district's precedent regarding the rule of forfeiture for a routine procedural issue that should have been addressed at the time of sentencing. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The Merced County District Attorney charged Tanner by amended information with forcible rape (Pen Code,[1] § 261, subd. (a)(2); Count 1), false imprisonment (§§ 236, 237, subd. (a); Count 2), criminal threats (§ 422; Count 3), assault with force likely to produce great bodily injury (§ 245, subd. (a)(4); Count 4) and furnishing methamphetamine (Health & Saf. Code, § 11379). An enhancement allegation was attached to Count 4 for personal infliction of great bodily injury (§ 12022.7, subd. (a)). It

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

was further alleged that Tanner had served three prior prison terms within the meaning of section 667.5, subdivision (b). The case went to trial in May 2013.

We provide only a brief summary of the trial evidence given its limited relevance to the issues on appeal. Vannessa, the 19-year-old victim and complaining witness, testified to being held against her will, assaulted, and raped by Tanner (age 31) over a two-day period. The crimes allegedly occurred at a house in Atwater where Tanner lived with his father, mother, and niece.

Vannessa met Tanner in October 2012 and formed a relationship with him which primarily involved smoking methamphetamine and having sexual intercourse. The victim acknowledged having consensual sex with Tanner multiple times while she was staying at his house during the final week of November 2012, when the events at issue took place. At one point, however, she declined to be physically intimate with him because her genitalia was sore from the sexual activity. Tanner ignored her protests and forced himself inside of her. Vannessa, who stood at 4'11" and weighed approximately 100 pounds, was unable to stop him.

After the first instance of unwanted intercourse, Vannessa's attempts to leave the residence were met with verbal threats and physical violence. Tanner allegedly disabled her cell phone and raped her several more times throughout the weekend. The victim described being tied to a bed and sodomized during one of the assaults. She was also choked to the point of losing consciousness. Once Vannessa was able to leave the house, she immediately reported the incident to police.

Tanner claimed his intercourse with Vannessa had been consensual, albeit "rough," "rugged," and of the "S&M" variety. She let him slap and choke her, and had voluntarily engaged in light bondage and anal sex. Tanner was sleeping with multiple women during this time period and regarded Vannessa as someone to whom he provided drugs in exchange for sexual favors. Her extended stay at his home caused tension between Tanner and his family members, who complained about the noise associated

3.

with their fornication. He eventually asked Vannessa to leave and she refused, which led to a violent argument. Tanner admittedly tried to throw Vannessa out of his bedroom window during the altercation. His family broke up the fight, and Vannessa left the house shortly thereafter.

Tanner was acquitted of false imprisonment as alleged in Count 2. He was convicted on Counts 3, 4, and 5, but the great bodily injury enhancement was rejected as not true. The jury deadlocked by a vote of 8 to 4 in favor of guilt on the forcible rape charge, which resulted in a mistrial on that count. Tanner subsequently admitted the prior prison term allegations. His criminal history included felony convictions for statutory rape in 2000 and 2006.

The trial court imposed an aggregate sentence of seven years and eight months in prison. This was calculated using the assault conviction as the principal count, for which Tanner received the middle term of three years. Consecutive terms of eight months and one year were imposed for Counts 3 and 5, respectively, plus consecutive one-year enhancements for each of Tanner's three prior prison terms.

Both sides presented argument regarding the possible imposition of a sex offender registration requirement. The prosecution argued for registration because Tanner's crimes were committed for purposes of sexual gratification. Defense counsel asserted that the Sixth Amendment to the United States Constitution precluded such a requirement absent findings by the jury regarding sexual compulsion or gratification because registration is a form of punishment. More specifically, counsel argued that "sex registration restricts [where someone] can live, who they can associate with, where they can work, and therefore those restrictions make it punitive." Recognizing that it had discretion not to do so, the trial court imposed a lifetime registration requirement pursuant to its authority under section 290.006. The court found Tanner's crimes were indeed committed for purposes of sexual gratification, and that such motivations were confirmed by the defendant's own trial testimony.

## DISCUSSION

### Constitutional Claims

"California law has long required persons convicted of certain specified sex crimes … to register as sex offenders as long as they live or work in California." (*Mosley*, *supra*, 60 Cal.4th at p. 1048, citing § 290, subds. (b), (c).)  When a defendant is convicted of an offense that does not carry a mandatory registration requirement, he or she may nevertheless be compelled to register as a sex offender due to the circumstances of the crime.  Non-mandatory registration is governed by section 290.006, which provides:  "Any person ordered by any court to register pursuant to the Act for any offense not included specifically in subdivision (c) of Section 290, shall so register, if the court finds at the time of conviction or sentencing that the person committed the offense as a result of sexual compulsion or for purposes of sexual gratification.  The court shall state on the record the reasons for its findings and the reasons for requiring registration."

Appellant does not challenge the constitutionality of the registration requirements in section 290 et seq., but rather the consequences which flow therefrom by operation of section 3003.5, subdivisions (b) and (c).  These provisions were added to the statutory scheme governing parole after the 2006 enactment of Proposition 83, also known as Jessica's Law.  (*Mosley*, *supra*, 60 Cal.4th at p. 1048.)  As a result, it is now "unlawful for any person for whom registration is required pursuant to Section 290 to reside within 2000 feet of any public or private school, or park where children regularly gather." (§ 3003.5, subd. (b).)  Municipalities may also enact local ordinances further restricting the residency of any person for whom registration is required pursuant to section 290. (§ 3003.5, subd. (c).)

Tanner's position rests on the premise that requiring him to register under section 290 inevitably subjects him to the residency restrictions of section 3003.5, which he believes are punitive.  In *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*), the United States Supreme Court held that the Sixth Amendment requires a jury to find "any

5.

fact that increases the penalty for a crime beyond the prescribed statutory maximum." (*Id.* at p. 490.) Relying on *Apprendi* and the notion that sex offender registration constitutes increased punishment, Tanner submits that imposition of the registration requirement based on findings made by the *trial court* violated his rights under the Sixth Amendment. Taking the argument one step further, he contends the residency restrictions in section 3003.5 are not only punitive, but have the practical effect of societal banishment and thus constitute cruel and unusual punishment. These claims are foreclosed by the recent decision in *Mosley*, *supra*.

The *Mosley* case arose from a trial court's discretionary order, made pursuant to section 290.006, that a defendant convicted of assault register as a sex offender due to the underlying circumstances of his crime. (*Mosley*, *supra*, 60 Cal.4th at pp. 1051-1052.) Confronted with essentially the same contentions as Tanner has raised here, our Supreme Court held that "the residency restrictions of Jessica's Law are not, on their face, an added 'penalty' for [the defendant's] conviction to which *Apprendi* applies. Like sex offender registration requirements, the restrictions are not intended as punishment or retribution for the offense or offenses that led to their imposition." (*Id.* at p. 1062.) The court also rejected the argument that the residency restrictions are akin to banishment. (*Id.* at p. 1066.) In summary, "[b]ecause sex offender registration orders are not punishment in and of themselves, their imposition is not subject to *Apprendi*." (*Id.* at p. 1070.)

In a two-page letter brief filed on March 24, 2015, Tanner concedes that we are "bound by *Mosley* at this juncture." However, the letter also contains references to another recently published opinion entitled *In re Taylor* (2015) 60 Cal.4th 1019 (*Taylor*), which supposedly "reveals that Penal Code section 3003.5, subdivision (b), is unconstitutional as applied to him." We must reject this claim as well.

The *Taylor* case was initiated through habeas petitions filed by registered sex offenders on active parole in San Diego County against whom section 3003.5,

6.

subdivision (b) had been enforced. (*Taylor*, *supra*, 60 Cal.4th at p. 1023.) The residency restrictions were not challenged as constituting cruel and unusual punishment, but rather on the basis of petitioners' "fundamental constitutional rights to intrastate travel, to establish and maintain a home, and to privacy and free association with others within one's home…." (*Id*. at p. 1036.) The high court concluded that due process protections under the Fourteenth Amendment rendered the statute's residency restrictions unconstitutional "as applied across the board to petitioners and similarly situated registered sex offenders on parole in San Diego County." (*Id*. at p. 1023.) However, the Department of Corrections and Rehabilitation "retains the statutory authority, under provisions in the Penal Code separate from those found in section 3003.5(b), to impose special restrictions on registered sex offenders in the form of discretionary parole conditions, including residency restrictions that may be more or less restrictive than those found in section 3003.5(b), as long as they are based on, and supported by, the particularized circumstances of each individual parolee." (*Ibid*.)

Tanner's cursory reference to the *Taylor* opinion does not warrant our consideration of his attempt to make an "as applied" challenge to the constitutionality of section 3003.5. (See *People v. Smithey* (1999) 20 Cal.4th 936, 1017, fn. 26 ["'Obvious reasons of fairness militate against our considering this poorly developed and untimely argument.'"].) The other problem is that section 3003.5 specifically applies to parolees and is triggered upon "the registered sex offender's securing of a residence upon his release from custody on parole." (*In re E.J*. (2010) 47 Cal.4th 1258, 1274.) There is nothing in the record to indicate Tanner is on parole or that the provisions of section 3003.5 have ever been enforced against him. The length of his prison sentence suggests the opposite. Thus, even if we were inclined to consider the merits of his argument, the claim is not ripe for review.

7.

**Forfeiture of Procedural Objections**

Tanner complains that the trial court did not fulfill its obligation to "state on the record the reasons for its findings *and the reasons for requiring registration.*" (§ 290.006, italics added.)  Our district rejected a similar claim in *People v. Bautista* (1998) 63 Cal.App.4th 865 (*Bautista*).  There, a trial court exercised its discretion to impose the sex offender registration requirement pursuant to former section 290, subdivision (a)(2)(E), which has since been renumbered as section 290.006.  (Stats. 2007, ch. 579, §§ 7, 14; *Lewis v. Superior Court* (2008) 169 Cal.App.4th 70, 76, fn. 4. ["The discretionary provision is found in section 290.006, which contains the provisions of former section 290, subdivision (a)(2)(E) without substantive change."].)  The trial judge in *Bautista* found registration to be appropriate "in view of the circumstances surrounding the offense."  (*Bautista*, *supra*, 63 Cal.App.4th at p. 867.)  On appeal, the defendant argued that it was necessary to remand the matter because the court failed to provide a statement of reasons for requiring registration.  (*Ibid.*)  We made the following observations:

"It is now settled a defendant cannot complain for the first time on appeal about the court's failure to state reasons for a sentencing choice.  [Citations.]  Bautista objected to the registration requirement, but did not object to the court's failure to provide a more complete statement of reasons for its findings and for requiring registration.  This routine defect could easily have been prevented and corrected had it been brought to the court's attention.  (*People v. Scott* [1994] 9 Cal.4th [331], 353.)"  (*Bautista*, *supra*, 63 Cal.App.4th at p. 868.)

Here, as in *Bautista*, defense counsel presented argument in opposition to the registration requirement and easily could have requested clarification or elaboration from the trial court regarding its sentencing decision.  The court's failure to articulate more clearly its reason for imposing the registration requirement "is a defect which could have

8.

been corrected by a timely objection."  (*Bautista*, *supra*, 63 Cal.App.4th at p. 871.)
Tanner "cannot raise the defect for the first time on appeal."  (*Ibid.*)

## DISPOSITION

The judgment is affirmed.

_____
GOMES, Acting P.J.

WE CONCUR:


_____
PEÑA, J.


_____
SMITH, J.